LIPIEC v. ZAWADZKI.

1. CORONERS—PURPOSE OF MEDICAL EXAMINERS ACT—INQUESTS.
   The purpose of the act creating the office of medical examiner and abolishing the office of coroner was to eliminate the latter in counties where the electorate has accepted the principle of pathological investigation in lieu of coroner-jury inquisition and the act did not confer upon the medical examiner the power to summon a jury and hold an inquest (CL 1948, § 773.1 et seq.; PA 1953, No 181).

2. SAME—TRANSFER OF POWERS TO MEDICAL EXAMINERS—JURY—INQUEST.
   Fact that hearings and other proceedings pending before a coroner were not abated but transferred to the medical examiner whose office was created by the act and the examiner was to conduct and determine in accordance with the provisions of law did not confer upon the medical examiner the power to summon a jury and hold an inquest, where use of phrase "insofar as consistent with the provisions of this act" precluded construction of the act as conferring such power (CL 1948, § 773.1 et seq.; PA 1953, No 181).

3. COSTS—CONSTRUCTION OF STATUTE.
   No costs are allowed in prohibition proceedings wherein the construction of a statute is involved (PA 1953, No 181).

Original petition for writ of prohibition by Walter Lipiec, taxpayer, against Edward S. Zawadzki, medical examiner for Wayne county, contesting the authority and duty of the latter to summon a jury and hold an inquest. Gerald K. O'Brien, prosecuting attorney for Wayne county, who ordered inquest, in-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 13 Am Jur, Coroners § 11.
[3] Generally, see 14 Am Jur, Costs § 23.

tervenes as party defendant. Submitted April 3, 1956. (Calendar No. 46,610.) Writ granted June 28, 1956.

*Sigmund A. Beras* (*Howard L. Ellis,* of counsel), for plaintiff.

*Stanley E. Beattie,* for defendant in support of writ.

*Gerald K. O'Brien,* Prosecuting Attorney, and *Samuel Brezner, John W. Gilmore* and *Samuel J. Torina,* Assistant Prosecuting Attorneys, for intervening defendant.

BLACK, J. This case, originally assigned to Mr. Justice REID, was reassigned to the writer May 14, 1956. It presents on petition for writ of prohibition agreed question whether the medical examiner of Wayne county* is under duty to summon a jury and hold an inquest—distinguished from conducting "an investigation"—when directed so to do by the prosecuting attorney of that county. The point being one of public moment and having been briefed with care by all 3 parties, we will assume for sake of prompt decision that petitioner's stated question 2—"Is the petitioner a proper party to apply for the writ of prohibition?"—should be answered in the affirmative.

The presented question is one of interpretation of Act No 181, from and within the 4 corners thereof. By section 2 the county medical examiner is obligated to make *examinations* upon the bodies of designated persons. By section 5 his investigative procedures are, as counsel for respondent say, "all spelled out." So far the act hints no duty or authority respecting

* The Wayne county medical examiner was duly appointed under and in pursuance of PA 1953, No 181 (CLS 1954, § 52.201 *et seq.* [Stat Ann 1955 Cum Supp § 5.953(1) *et seq.*]).

the summoning of a jury and the holding of an inquisition according to time-honored practice.

Section 7 stands in consistent line with conclusions already reached. It provides that upon the written order of the prosecuting attorney or attorney general, or upon due filing of a petition signed by 6 electors of the county, the county medical examiner shall conduct an *investigation* according to the procedures set forth in section 5.* Again, by its silence and implication from silence, section 7 displays no grant of power of inquisition distinguished from investigation.

We next come to troublesome section 13. It reads:

"Sec. 13. In counties having a medical examiner under the provisions of this act, *the powers and duties vested by law in the office of coroner are hereby transferred to and vested in the county medical examiners* and their deputies. In such counties immediately upon the taking effect of this act, the office of coroner shall be abolished, and *whenever reference thereto is made in any law* of this State, *reference shall be deemed to be intended to be made to the medical examiners* created by this act, *insofar as consistent with the provisions of this act.* Any hearing or other proceeding pending before any coroner shall not be abated but shall be deemed to be transferred to the medical examiner of the proper county and shall be conducted and determined by such examiner in accordance with the provisions of law." (CLS 1954, § 52.213 [Stat Ann 1955 Cum Supp § 5.953(13)].)

We have italicized the portions of this section on which presently-stated contentions are asserted. The prosecutor says that all of the previously-known powers and duties of coroners, including the power and duty of jury inquisition and functions thereof,

---

* The error of reference in section 7 to section 6, when the legislative draftsman manifestly intended section 5, is recognized.

are transferred by this section to the county medical examiner. That would relevantly mean all of the powers and duties enumerated in chapter 13 of the code of criminal procedure (CL 1948, § 773.1 *et seq.* [Stat Ann 1954 Rev § 28.1169 *et seq.*]) The parties petitioner and respondent rejoin by pointing to the qualifying words "insofar as consistent with the provisions of the act." They say on strength of such words that the power and duty of coroner-jury inquisition is not so transferred. So the issue is made and refined.

*First:* The purpose of the act, considering title and body together, is irresistible. The unitedly considered language used in the first 2 sentences of section 13 is, to use our expression, "quite inartistic," yet it does not impede the sometimes clumsy and presently elephantine force of that which is known to the profession as "legislative intent." The legislature was out to eliminate the senescent "crowner's quest" in counties where the electorate decides by the act of 1953 to accept the principle of pathological investigation in lieu of coroner-jury inquisition, and we arrive at this conclusion by considering the act as a whole and the first 2 sentences of section 13 as 1 sentence.

The 2 sentences ride together on a single track and make the same stop at end of the line. One depends on the other, and neither accomplishes its purpose without coextensive aid of such other. The first necessarily transfers powers and duties to extent of consistency with preceding sections and the other referentially adopts legislation providing such powers and duties to extent of similar consistency. To hold otherwise would mean imputation to the legislature of intent to transfer all powers and duties enumerated in said chapter 13 and separate imputation of intent to put the title "county medical examiner" into such portions only of said chapter 13

as would leave consistency with preceding sections 1 through 12 of said PA 1953, No 181. We, as interpreter, should not head into that sea of Scylla. It looks dangerous.

Holding, as recorded above, that Act No 181 contains no words or phrases suggesting grant of or transfer to the county medical examiner of inquisitorial powers distinguished from investigative authority,* we find that the legislature intended that the first 2 sentences of section 13 be restricted together and as a unit by the quoted words "insofar as consistent with the provisions of this act," and that the act consequently extends investigative power only, as defined in sections 1 through 12, to the medical examiner of Wayne county. The result we have reached thus and as to Wayne county corresponds with that shown in *Senior* v. *Boyle,* 221 NY 414, 417 (117 NE 618). The court said:

"The chief medical examiner acts without a jury, holds no inquest, renders no decision, holds no one to answer, issues no warrant of arrest. The ancient office is gone and the ancient duties have largely disappeared with it. Another method of investigating suspicious deaths has supplanted crowner's quest."

For clarity of ruling we engage the procedure of visual aid as utilized in *City of Jackson* v. *Commissioner of Revenue,* 316 Mich 694 at page 723, and construe the first 2 sentences of said section 13 to mean (words and punctuation in parenthesis supplied):

"Sec. 13. In counties having a medical examiner under the provisions of this act, the powers and duties vested by law in the office of coroner are hereby

---

* Prosecuting attorneys and the attorney general are examples of officers having investigative but not inquisitorial powers and the county medical officer now becomes another.

transferred to and vested in the county medical examiners and their deputies (, insofar as consistent *with the provisions of this act, and,*). In such counties immediately upon the taking effect of this act, the office of coroner shall be abolished, and whenever reference thereto is made in any law of this State, reference shall be deemed to be intended to be made to the medical examiners created by this act, insofar as consistent with the provisions of this act."

*Second:* In support of his stated contention the prosecuting attorney places some little emphasis on the final sentence of the first paragraph of said section 13. It reads:

"Any hearing or other proceeding pending before any coroner shall not be abated but shall be deemed to be transferred to the medical examiner of the proper county and shall be conducted and determined by such examiner in accordance with the provisions of law."

The manner in which medical examiners must conduct and determine pending hearings and proceedings, from and after transition, is not before us. It may be that the legislature intended, in such special instance, that medical examiners should have the procedural and quasi-judicial authority of a coroner solely for the purpose of concluding such unabated hearings and proceedings. Be that as it may, we hold that the last-quoted provision does not affect our ruling upon the initially stated question.

The writ as applied for will issue against the respondent medical examiner. It will restrain him

from summoning a jury and conducting an inquest, all in accordance with the prayer of the petition. No costs to any party.

SHARPE, SMITH, and BOYLES, JJ., concurred with BLACK, J.

DETHMERS, C. J., and CARR, J., concurred in the result.

KELLY, J., did not sit.

EDWARDS, J., took no part in the decision of this case.